UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

ANTHONY L. WILSON                                             Movant/Defendant

v.                                             Criminal Action No. 3:21-cr-059-RGJ
                                                Civil Action No. 3:22-cv-593-RGJ

UNITED STATES OF AMERICA                                      Respondent/Plaintiff

\* \* \* \* \*

**MEMORANDUM OPINION & ORDER**

Petitioner Anthony L. Wilson ("Wilson") objects [DE 58] to the Magistrate Judge's Report and Recommendation ("R&R") [DE 55] for disposition of Wilson's petition for a writ of habeas corpus under 28 U.S.C. § 2255 [DE 46]. The time for the United States of America to respond to Wilson's objections has expired. *See* Fed. R. Civ. P. 72(b)(2). For the following reasons, Wilson's objections are **OVERRULED**, and the Court **ACCEPTS** the Magistrate Judge's recommended disposition.

### I.    BACKGROUND

The Court incorporates by reference the findings of fact made in the R&R. [DE 55]. In relevant part, the Magistrate Judge's R&R made the following findings of fact:

> United States Postal inspectors, while conducting an Express/Priority Mail profiling operation in Louisville, found one parcel that had characteristics that indicated it contained controlled substances on April 22, 2021. The parcel was placed in a line-up, and a canine from the Shively Kentucky Police Department gave a positive alert. Subsequently, US Postal Inspector Charles Klein obtained a warrant for the package and executed the warrant, finding that the package contained approximately five pounds of suspected methamphetamines. On the same day, a Shively Police Detective applied for an Anticipatory State Search Warrant for the delivery address. Later that afternoon at 4:48 PM, a postal inspector conducted a controlled delivery of the package to the address, and at 4:50 PM law enforcement agents went to the address, entered the single-family home, and talked to the occupants. Based on the discussion with the occupants, three young minors and an older gentleman, law enforcement learned that the package was to be picked

1

> up by an individual known as "Bone." Inspector Klein testified the older gentleman was the father of Ms. Reed, "the intended person that was not there that was supposed to receive—or expected to receive the package." Inspector Klein further testified that, during law enforcement's surveillance, Ms. Reed's was texting her daughter "that someone will be coming to pick up the package[.]"
>
> At approximately 6:10 PM, Wilson along with two others pulled into the residence's driveway. Inspector Klein stated at the preliminary hearing: We – so through the text messages with the – Miss Reed and her daughter, she wanted her daughter to take the package out to the vehicle that was coming. We, obviously, did not feel safe for the minor to do that, so when the vehicle did pull up, we did approach the vehicle. None of the occupants of the car went to the residence to ask for a package. Inspector Klein testified that he and four other officers, with weapons drawn, approached the vehicle, which had tinted windows, asked the occupants to step out of the car and put their hands up. There was no movement for what seemed like two or three minutes. Some K9 – a K9 handler approached with his – his K9, and, subsequently, Mr. Wilson did stick hand out of the driver's side window, and we all intervened and pulled the other occupants out with Mr. Wilson as well. In the affidavit and the preliminary hearing, Inspector Klein stated that the smell of marijuana was emitting from the car. Once removed from the vehicle, Wilson and the two passengers were place in handcuffs. While searching the vehicle, one of the officers pulled out a bag and asked what was in it, and "Mr. Wilson made a statement that 'Everything in the vehicle is mine, they knew nothing about – about it.'" This statement occurred before Wilson was Mirandized. Additionally, Wilson made later statements that indicated he did not know what was in the backpack. The backpack contained approximately five pounds of methamphetamine. The search also revealed two firearms in the vehicle, one of which was in the cupholder of the front center console.

[DE 55 at 298-99 (citations omitted)].

Wilson pled guilty to possession with intent to distribute methamphetamine and possession of a firearm by a prohibited person. [DE 23]. The charges carried a combined minimum sentence of 10 years. [DE 22 at 80]. Wilson entered into a binding written plea agreement with the United States under Federal Rule of Criminal Procedure 11(c)(1)(C), which proposed a sentence of 130 months. [DE 55 at 299]. The Presentence Investigation Report produced a sentencing guideline range of 262-327 months. [DE 26]. Both the United States and Wilson submitted sentencing memorandums, in which both parties affirmed the request for 130 months. [DE 55 at 299].

According to Wilson's sentencing memorandum:

> The undersigned and the United States discussed this case at length prior to resolution. The United States and Mr. Wilson recognized that there were potential suppression issues involving the probable cause to search the vehicle where the 5 pounds of methamphetamine and gun were located. The United States and Mr. Wilson also recognized that there were potential suppression issues involving the alleged incriminating statements made by Mr. Wilson. In an effort to reach an equitable settlement while balancing the respective risks involved with litigating these suppression issues, Mr. Wilson and the United States agreed to a 130 month sentence as a reasonable compromise. Mr. Wilson respectfully requests that this Court accept the agreement between the parties.

[DE 28 at 147]. And at the sentencing hearing, both parties reiterated the potential suppression issues and the decision to seek a negotiated settlement in lieu of filing a suppression motion. [DE 55 at 300]. The Court accepted the plea agreement and imposed a sentence of 130 months imprisonment. [*Id.*].

Wilson petitions this Court to vacate, amend, or set aside his sentence under 28 U.S.C. § 2255. [DE 46]. Wilson raises one argument in support – that his counsel was ineffective because he "failed to pursue a meritorious Fourth Amendment violation based on an illegal search and seizure[.]" [DE 46-1 at 258]. Wilson's petition was referred to Magistrate Judge Brennenstuhl pursuant to 28 U.S.C. § 636(b)(1)(A) & (B) [DE 47], who issued a Report and Recommendation. [DE 55]. On April 29, 2024, after considering Wilson's argument, the Magistrate Judge recommended that the Court deny Wilson's claim. [*Id.*].

Objections to the magistrate judge's recommendation were due within fourteen days after service. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2). Objections were thus due on May 13, 2024. [DE 56 at 308]. That time period past and objections were never filed. [*Id.*]. As a result, and after independent review, this Court found no error and accepted the R&R and entered judgment on May 22, 2024. [*Id.* at 309]. Wilson filed objections on July 5, 2024, and filed two letters days later explaining the delay and requesting consideration of his objections [DE 59; DE

3

60]. On consideration of requests, this Court deemed Wilson's objections timely and vacated its order. [DE 61].

This Court now considers Wilson's objections on the merits. Wilson objects to the Magistrate Judge's recommendations that (1) Wilson "failed to establish that his potential suppression issue was so clearly meritorious that no competent attorney would think a motion to suppress would fail[,]" and (2) Wilson "failed to show his counsel has no reasonable strategic rationale for not filing a motion to suppress the physical evidence[.]" [DE 58 at 313, 315].

## II.   STANDARD

A district court may refer a motion to a magistrate judge to prepare a report and recommendation. 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(1). "A magistrate judge must promptly conduct the required proceedings ... [and] enter a recommended disposition, including, if appropriate, proposed findings of fact." Fed. R. Civ. P. 72(b)(1). This Court must "determine de novo any part of the magistrate judge's disposition that has been properly objected to." 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). The Court need not review under a *de novo* or any other standard those aspects of the report and recommendation to which no specific objection is made and may adopt the findings and rulings of the magistrate judge to which no specific objection is filed *Thomas v. Arn*, 474 U.S. 140, 150, 155 (1985).

A specific objection "explain[s] and cite[s] specific portions of the report which [counsel] deem[s] problematic." *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) (alterations in original) (citation omitted). "[A] general objection to a magistrate's report, which fails to specify the issues of contention, does not satisfy the requirement that an objection be filed. The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) (citing *Howard v. Sec'y of Health*

*& Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991)). Likewise, "[t]he filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object." *United States v. Estey*, No. 317CR170CHBLLK3, 2023 WL 2823993, at *5 (W.D. Ky. Apr. 7, 2023), certificate of appealability denied, No. 23-5419, 2023 WL 7325613 (6th Cir. Oct. 4, 2023) (quoting *Cole v. Yukins*, 7 F. App'x 354, 356 (6th Cir. 2001) and citing *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995)). Moreover, an "objection . . . that merely reiterates arguments previously presented, does not adequately identify alleged errors on the part of the magistrate judge." *Altyg v. Berryhill*, No. 16-11736, 2017 WL 4296604, at *1 (E.D. Mich. Sept. 28, 2017). It is true, of course, that *pro se* filings are construed more liberally than those made by those proceeding with the assistance of counsel. *See Franklin v. Rose*, 765 F.2d 82, 84–85 (6th Cir. 1985). But such liberal construction is not without its limitations. *Clark v. Johnson*, 413 F. App'x 804, 817 (6th Cir. 2011) ("Though the pleading standard for *pro se* litigants is liberal, it is not without its limits, and does not 'abrogate basic pleading essentials in *pro se* suits.'"). Still, "[o]bjections that merely state disagreements with the magistrate judge's conclusion or restate arguments previously presented to the magistrate judge are improper." *United States v. David*, 421 F. Supp. 3d 433, 440 (E.D. Ky. 2019), *aff'd*, No. 20-5835, 2021 WL 5782360 (6th Cir. Dec. 7, 2021).

After reviewing the evidence, the Court is free to accept, reject, or modify the proposed findings or recommendations of the magistrate judge. *Id.* Moreover, the Court may adopt the findings and rulings of the magistrate judge to which no specific objection is filed. *Thomas v. Arn,* 474 U.S. 140, 151 (1985).

### III.     ANALYSIS

A defendant may move to vacate, set aside, or correct his sentence, if it "was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *McPhearson v. United States*, 675 F. 3d 553, 558–59 (6th Cir. 2012). The petitioner has the burden of proving his claims by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

Yet a defendant may waive his right to appeal his sentence under § 2255 pursuant to a plea agreement. *United States v. Fleming*, 239 F.3d 761, 763-64 (6th Cir. 2001) (citation omitted). The court enforces waivers of the right to appeal a sentence so long as they "have been entered into knowingly and voluntarily." *Cox v. United States*, 695 F. App'x 851, 853 (6th Cir. 2017). As a result, if the defendant waived his right to appeal, as is the case here, he may challenge the waiver based only on "the validity of his waiver, such as a claim that the waiver was involuntary or the product of ineffective assistance of counsel." *In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007).

In *Strickland v. Washington*, 466 U.S. 668, 686 (1984), the Supreme Court established the two-part, benchmark test for evaluating a claim of ineffective assistance of counsel. First, the defendant must show that the performance of his or her attorney was deficient. An attorney's performance will be deficient if "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. *Strickland* directs courts to be highly deferential in their scrutiny of the performance of counsel. *Id.* at 689. In fact, *Strickland* cautions directly that "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690; *O'Hara v. Wigginton*, 24 F.3d 823, 282 (6th Cir. 1994).

Review of an attorney's performance should evaluate the objective reasonableness of the challenged attorney's performance in the circumstances as they existed at the time of the alleged error, not from hindsight. *McQueen v. Scroggy*, 99 F.3d 1302, 1311 (6th Cir. 1996); *Cobb v. Perrine*, 832 F.2d 342, 347 (6th Cir. 1987). The Court is to presume tactical decisions of a defendant's trial counsel are part of sound trial strategy and therefore will not be subject to successful attack absent a defendant overcoming this presumption. *Varden v. Wainwright*, 477 U.S. 168, 185–87 (1986).

The second part of *Strickland's* two-part test requires that the defendant establish the attorney's deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. "[W]hen a defendant claims that his counsel's deficient performance deprived him of a trial by causing him to accept a plea, the defendant can show prejudice by demonstrating a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Lee v. United States*, 137 S. Ct. 1958, 1965 (2017) (citation and internal quotation marks omitted). But "[c]ourts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiency . . . Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Id.* at 1967. This is an objective test, so a petitioner must show "that a decision to reject the plea bargain would have been rational under the circumstances." *United States v. Jabero*, No. 03-81060-2, 2012 WL 3109405, at *4 (E.D. Mich. July 31, 2012) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

A. First Objection

Wilson objects to the Magistrate Judge's recommendation that Wilson "failed to establish that his potential suppression issue was so clearly meritorious that no competent attorney would

7

think a motion to suppress would fail[.]" [DE 58 at 313]. Magistrate Judge Brennenstuhl reasoned that the decision for counsel to not pursue a suppression motion was a reasonable strategy, as Wilson received less than half of the minimum guideline range. [DE 55 at 305]. Wilson argues that no reasonable attorney would have failed to move to suppress because the text messages and the smell of marijuana do not support a finding of reasonable suspicion, and therefore the search of the vehicle violated his fourth amendment right. [DE 58 at 314-15].

"The stop of a vehicle qualifies as the 'seizure' of a 'person' that must be 'reasonable' under the Fourth Amendment." *United States v. Brooks*, 987 F.3d 593, 598 (6th Cir. 2021) (citing *Whren v. United States*, 517 U.S. 806, 809–10 (1996)). Officers may stop a driver based on a reasonable suspicion that a felony has occurred or that a misdemeanor is continuing to occur *Id*.; *United States v. Collazo*, 818 F.3d 247, 253–54 (6th Cir. 2016). The Sixth Circuit has indicated that, if a misdemeanor is completed, officers must have probable cause for an investigatory stop. *Gregory v. Burnett*, 577 F. App'x 512, 516 (6th Cir. 2014) (citing *United States v. Simpson*, 520 F.3d 531, 540–41 (6th Cir. 2008)).

"Reasonable suspicion" is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). Reasonable suspicion is "more than an ill-defined hunch; it must be based upon a particularized and objective basis for suspecting the particular person of criminal activity." *Houston v. Clark Cnty. Sheriff Deputy John Does 1-5*, 174 F.3d 809, 813 (6th Cir. 1999) (cleaned up). "It requires specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant an investigatory stop." *Id*. (quotations and citation omitted).

However, "an officer's detection of the smell of marijuana in an automobile can by itself establish probable cause for a search." *United States v. Elkins*, 300 F.3d 638, 658 (6th Cir. 2002).

Probable cause is defined as "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir.1990), Probable cause exists "when there is a 'fair probability,' given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *Davidson*, 936 F.2d at 859.

Here, the scent of marijuana provided probable cause to justify a search of the entire vehicle. *United States v. Bailey*, 407 F. App'x 27, 28-29 (6th Cir. 2011) (finding that the automobile exception applied when the smell of marijuana provided probable cause to initially search the car, and marijuana was found on the floorboard). Wilson argues that it is impossible for the officer to smell marijuana because the windows of the car were rolled up. [DE 58 at 314]. However, according to Inspector Klein's affidavit, it was only after Wilson and the two other occupants were detained that the odor of marijuana emitted from the car. [DE 1-1 at 6 ¶ 11]. In other words, the car door was open when officers smelled marijuana, and therefore, Wilson's argument that officers could not smell marijuana through a closed window is moot.

Wilson also contends that "[Ms. Reed's] text messages do not support a finding that reasonable suspicion was present because the messages do not establish that any person in the vehicle was 'Bone.'" [DE 58 at 315-16]. Specifically, Wilson argues that the text messages "do not support a notion that Movant was at the location in question to retrieve the package in question," and "simply provide no level of detail that would allow law enforcement to distinguish the person they were lying in wait for from anyone else in the area." [*Id*. at 315]. Wilson points to *Florida v. J.L.*, 529 U.S. 266 (2000) to support his argument. [*Id*.].

Wilson asserts that *Florida v. J.L* supports his proposition because the Supreme Court "found that a tip that included the age, ethnicity, clothing type, and specific location of the subject

9

was not enough to justify reasonable suspicion for an arrest." [DE 58 at 315]. But this is not what the Supreme Court held in *Florida v. J.L.*, rather, in sum, the Supreme Court held that that an anonymous tip that a person is carrying a gun, without more, is insufficient to justify a police officer's stop and frisk of that person. 529 U.S. 266, 273 (2000). The issue here is distinct from the issue found in *Florida v. J.L.*, as the text messages were not sent from an anonymous source. Instead, the text messages were sent from Ms. Reed, the woman whose address was on the original package containing methamphetamine that officers intercepted. Her description of "Bone," and Wilson pulling into the driveway of the same address where the methamphetamine was sent, was enough to establish probable cause.

Thus, when reviewing the record, there is enough alleged to confer probable cause for officers to search the car and the packages found within. Under the circumstances discussed above, the success of a suppression motion was not plain or clear, and Wilson has not overcome the "strong presumption" that counsel's performance was "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Accordingly, Wilson's first objection is **OVERRULED**.

B. Second Objection

Second, Wilson objects to the Magistrate Judge's recommendation that Wilson "failed to show his counsel has no reasonable strategic rationale for not filing a motion to suppress the physical evidence[.]" [DE 58 at 315]. Wilson argues that the Magistrate Judge failed to "point to any intervening information that justifies counsel's change of heart" and "points to nothing that came out of this 'further investigation' that would suggest that law enforcement acted on reasonable suspicion[.]" [*Id*. at 316]. Wilson reiterates that "[t]he fact that counsel knew that the smell of marijuana justification was bellied by the record and that the text message did not

contain information enough to convey reasonable suspicion, shows that that there is no reason for his change of seeing a clear violation to advocating for a plea." [*Id.*]. But as discussed above, officers had probable cause to search Wilson's vehicle, and probable cause is a higher burden of proof than reasonable suspicion. Because officers had probable cause, the strength of a suppression motion is not plain nor clear, and therefore a reasonable lawyer could have chosen not to pursue a suppression hearing. Therefore, Wilson has not overcome the "strong presumption" that counsel's performance was "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Accordingly, Wilson's second objection is **OVERRULED**.

## IV.    CONCLUSION

For all these reasons, and the Court being otherwise sufficiently advised, **IT IS ORDERED** that Wilson's objections [DE 58] are **OVERRULED**. The Court **ACCEPTS** the Magistrate Judge's recommended disposition [DE 55]. Wilson's habeas petition [DE 46] is **DISMISSED** with prejudice. The Court will enter separate judgment.

June 20, 2025

Rebecca Grady Jennings, District Judge
United States District Court